**Hearing Date: December 12, 2017 at 10:00 a.m.**
**Objection Deadline:  December 5, 2017 at 4:00 p.m.**

**BECKER, GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP**
299 Park Avenue, 16th Floor
New York, New York 10171
Telephone: 212-888-3033
Facsimile: 212-888-0255
Chester B. Salomon
csalomon@beckerglynn.com
Alec P. Ostrow
aostrow@beckerglynn.com

*Attorneys for 387 Park South L.L.C.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>ARTISANAL 2015, LLC,<br><br>     Debtor. | Chapter 11<br><br>Case No. 17-12319 (JLG) |
| ARTISANAL 2015, LLC,<br><br>     Plaintiff,<br><br> -  against  -<br><br>387 PARK SOUTH L.L.C.,<br><br>     Defendant. | Adv. Proc. No. 17-01173 (JLG) |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO**
**DISMISS OR ABSTAIN**

## Table of Contents

Table of Authorities ...................................................................................................... iii

Preliminary Statement .................................................................................................. 1

Statement of the Case .................................................................................................. 1

Argument ...................................................................................................................... 9

I.      BECAUSE THE ADVERSARY COMPLAINT SEEKS
        TO RELITIGATE MATTERS ALREADY
        DETERMINED ADVERSELY TO THE  PLAINTIFF IN
        INTERLOCUTORY JUDGMENTS ON APPEAL, THE
        *ROOKER-FELDMAN* DOCTRINE DEPRIVES THIS
        COURT OF SUBJECT MATTER JURISDICTION ................................. 9

II.     MANDATORY BANKRUPTCY ABSTENTION IS
        WARRANTED ....................................................................................... 13

III.    PERMISSIVE BANKRUPTCY ABSTENTION IS ALSO
        APPROPRIATE ..................................................................................... 16

IV.     THIS COURT SHOULD ALSO ABSTAIN UNDER THE
        DOCTRINE OF *YOUNGER v. HARRIS* .................................................. 18

Conclusion ................................................................................................................. 19

# Table of Authorities

## Cases

*Allied Mechanical & Plumbing Corp. v. Dynamic Hostels Housing Dev. Fund Co. (In re Allied Mechanical & Plumbing Corp.)*,
  62 B.R. 873 (Bankr. S.D.N.Y. 1986) ........................................................................... 13

*Bianchi v. Rylaarsdam*,
  334 F.3d 895 (9th Cir. 2003) ...................................................................................... 11

*Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*,
  372 F.3d 154 (3d Cir. 2004) ....................................................................................... 14

*CORE Litig. Trust v. Apollo Global Mgmt., LLC (In re AOG Entm't, Inc.)*,
  569 B.R. 563 (Bankr. S.D.N.Y. 2017) ........................................................................ 15

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005) ............................................................................................. 11, 12

*First Nat'l Stores v. Yellowstone Shopping Ctr.*,
  21 N.Y.2d 630, 237 N.E.2d 868, 290 N.Y.S.2d 721 (1968) ......................................... 2

*Go W. Entm't, Inc. v. N.Y. State Liquor Authority (In re Go W. Entm't, Inc.)*,
  387 B.R. 435 (Bankr. S.D.N.Y. 2008) ........................................................................ 18

*Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave. Assocs,*,
  93 N.Y.2d 508, 715 N.E.2d 117, 693 N.Y.S.2d 91 (1999) ........................................... 2

*Hoblock v. Albany Cty. Bd. of Elections*,
  422 F.3d 77 (2d Cir. 2005) ......................................................................................... 11

*In re Artisanal 2015, LLC*, No. 17-12319 (JLG),
  2017 WL 5125545 (Bankr. S.D.N.Y. Nov. 3, 2017) ........................................... *passim*

*In re Dreier*,
  438 B.R. 449 (Bankr. S.D.N.Y. 2010) .................................................................. 13, 17

*In re Project Orange Assocs.*,
  432 B.R. 89 (Bankr. S.D.N.Y. 2010) ............................................................................ 2

*Johnson v. De Grandy*,
  512 U.S. 997, 1005 (1994) .......................................................................................... 11

*Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*,
  241 B.R. 511 (Bankr. S.D.N.Y. 1999) ........................................................................ 17

*N.Y. City Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.)*,
  293 B.R. 308 (S.D.N.Y. 2003) ............................................................................. 13, 17

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
  639 F.3d 572 (2d Cir. 2011) ....................................................................................... 15

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
  671 F.3d 261 (2d Cir. 2012) ....................................................................................... 15

*Parsons Steel, Inc. v. First Ala. Bank*,
  474 U.S. 518 (1986) .................................................................................... 12

*Pennzoil Co. v. Texaco Inc.*,
  481 U.S. 1 (1987) ........................................................................................ 18

*Penthouse Media Grp. v. Guccione (In re Gen'l Media, Inc.)*,
  335 B.R. 66 (Bankr. S.D.N.Y. 2005) ........................................................ 14

*Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*,
  907 F.2d 1280 (2d Cir. 1990) .................................................................... 17

*State of N.Y. Higher Educ. Sevs. Corp. v. Starr*,
  158 A.D.2d 771, 551 N.Y.S.2d 363 (3d Dep't 1990 ................................. 12

*Truebro, Inc. v. Plumberez Special Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*,
  311 B.R. 551 & n.13 (Bankr. C.D. Cal. 2004) .......................................... 17

*Wood v. Wood (In re Wood)*,
  825 F.2d 90 (5th Cir. 1987) ....................................................................... 14

*Younger v. Harris*,
  401 U.S. 37 (1971) ..................................................................................... 18

**Statutes**

11 U.S.C. § 365 ................................................................................................ 11

11 U.S.C. § 1123 .............................................................................................. 11

28 U.S.C. § 1331 .............................................................................................. 15

28 U.S.C. § 1332 .............................................................................................. 15

28 U.S.C. § 1334(b) ........................................................................................ 14

28 U.S.C. § 1334(c)(1) .................................................................................... 16

28 U.S.C. § 1334(c)(2) .................................................................................... 13

28 U.S.C. § 1738 ....................................................................................... 11, 12

N.Y. C.P.L.R. § 105(k) .................................................................................... 12

N.Y. C.P.L.R. § 5701(a)(1)-(2)(i) ................................................................... 12

**Other Authorities**

18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and
  Procedure 2d* § 4469.1 (2002) ................................................................... 10

David D. Siegel, *New York Practice* § 448, at 781 (5th ed. 2011) .................. 12

iv

## Preliminary Statement

387 Park South L.L.C. (the "Defendant" or the "Landlord"), by its undersigned attorneys, respectfully submits this memorandum of law in support of its motion to dismiss for lack of subject matter jurisdiction or abstain from hearing the above-captioned adversary proceeding filed by Artisanal 2015, LLC (the "Plaintiff" or the "Debtor").

## Statement of the Case

The Debtor, not content with the results in the two pre-petition actions it had commenced against the Landlord in the Supreme Court of the State of New York, County of New York ("State Court") to prevent the Landlord from terminating the Debtor's lease and recovering the subject premises, has commenced an adversary proceeding in this Court seeking to accomplish the same result.  As set forth below, the current adversary proceeding covers the same matters as these two State Court actions, and constitutes impermissible forum shopping.

Pursuant to a certain Retail Lease, dated October 5, 2015, between the Landlord and the Debtor, as amended by a certain First Amendment of Lease, dated September 9, 2016 (collectively, the "Lease"),[1] certain portions of the ground floor and basement of 387 Park Avenue South (the "Premises") were leased to the Debtor for the purpose of constructing and then operating a first class, upscale French bistro and lounge under a trade name that includes the word "Artisanal."  Section 1.16 of the Lease required the Debtor to open its restaurant within one year of the "Commencement Date."  Pursuant to

---

[1] The Lease is attached to the Debtor's Adversary Complaint as Exhibit B.

1

a Commencement Date Agreement, dated November 25, 2015,[2] the Landlord and the

Debtor agreed that the Commencement Date was December 1, 2015.  As a result, in

accordance with Section 1.9 of the Lease, the Debtor's obligation to pay rent started 330

days after the Commencement Date, which was October 26, 2016.  In addition, the

restaurant was required to be open by November 30, 2016.  Despite this requirement, the

restaurant has not yet opened.  The Premises remain unfinished and raw.  The parties

have been in litigation about the Lease since the beginning of 2017.

In response to the Landlord's December 22, 2016 notice to cure for nonpayment

of rent, on January 6, 2017, the Debtor commenced an action against the Landlord in

State Court, Index No. 650103/2017 (the "First *Yellowstone* Action").  The First

*Yellowstone* Action sought what is commonly known as a *Yellowstone* injunction,[3] tolling

the cure period for the December 22, 2016 notice to cure for nonpayment of rent, and

preventing the Landlord from terminating the Lease.  Among other issues raised in the

First *Yellowstone* Action, the Debtor sought a determination that it was not required to

pay rent because the Landlord, prior to delivering possession of the premises, had

improperly constructed a door (the "Purported Door Issue"), which had the effect of

delaying the commencement of the Debtor's obligation to pay rent.  In particular, the

---

[2] The Commencement Date Agreement is attached to the Debtor's Adversary Complaint as Exhibit D.

[3] This kind of injunction, aimed at preventing the termination of a lease by tolling the cure period while the parties' dispute is determined by a state court, derives from the New York Court of Appeals decision in *First Nat'l Stores v. Yellowstone Shopping Ctr.*, 21 N.Y.2d 630, 635, 638, 237 N.E.2d 868, 869, 871, 290 N.Y.S.2d 721, 723, 725 (1968), in which the court declared it was powerless to revive a lease that had terminated because the tenant did not obtain a temporary restraining order.  *See Graubard Mollen Horowitz Pomeranz & Shapiro v. 600 Third Ave. Assocs.*, 93 N.Y.2d 508, 513, 715 N.E.2d 117, 119-20, 693 N.Y.S.2d 91, 94 (1999); *see also In re Project Orange Assocs.*, 432 B.R. 89, 99 n.3 (Bankr. S.D.N.Y. 2010).

Debtor made the following allegations in an affidavit submitted by its principal, Mr.

Sarid Drory:

> 6.    Plaintiff does not believe that it is in violation of its lease in any way because, among other things, it has been prevented by defendant from completing its construction and operating its restaurant as a result of defendant's failure to comply with its obligations under the Lease and applicable law.  In particular plaintiff is advised by its architect that one of the Building's two principal entranceways located on Park Avenue South (as depicted on <u>Exhibit C</u> to the Lease) does not appear on the New York City Department of Building's records.  As a result, plaintiff's architect and designer have been precluded from finalizing plans and obtaining permits to complete its multi-million dollar construction and open for business.

> 7.    Since June 2016, I have inquired with defendant as to when it would legalize this critical means of ingress/egress without receiving a meaningful response.  Instead, I was told that the defendant had the appropriate documentation and simply had to locate it.

> 8.    Pursuant to the Lease, Tenant is entitled to a day-for-day rent abatement as it is unable to open for business (*see* <u>Exhibit A</u> at § 9.1).

> 9.    Additionally, defendant has deprived plaintiff of approximately 1,300 square feet of space that was demised under the Lease.  This constitutes an actual partial eviction of plaintiff from a portion of the premises and, thus, I am advised that no rent is due.[4]

Although the State Court has not issued a final determination of the Purported

Door Issue, it provisionally ruled against the Debtor on this issue when granted a

*Yellowstone* injunction conditioned on the continued payment of use and occupancy.[5]

---

[4] A copy of Mr. Drory's affidavit is annexed to the accompanying declaration of Alec P. Ostrow as Exhibit 1.

[5] The State Court's order in the First *Yellowstone* Action granting the *Yellowstone* injunction conditioned, among other things, on the continued payment of use and occupancy, is annexed to the Debtor's Adversary Complaint as Exhibit A.

Moreover, as shown in the transcript of the hearing at which Justice Kornreich decided to

grant the *Yellowstone* injunction, she ruled that the Debtor's allegation of an improper

door was based on hearsay, that the Debtor signed the Commencement Date Agreement

with the acknowledgment that the Landlord's Work was Substantially Completed, and in

any event, that the Debtor failed to comply with its contractual obligation, pursuant to,

*inter alia*, Section 9.1 of the Lease, to notify the Landlord promptly, having waited from

June to November 2016 before notifying the Landlord of the issue. *See* Transcript of

February 8, 2017 Hearing in First *Yellowstone* Action, at 7-9, 14-15, 17-18.[6]

That the Purported Door Issue is central to the First *Yellowstone* Action can be

easily seen from the following allegations in the verified complaint in that action:

> 14.    Sometime in or around June, 2016, Tenant
> became aware for the first time that one of the two
> principal entranceways to the Premises located on Park
> Avenue South, and the only doorway to the retail portion of
> the Premises, did not appear in the records of the New York
> City Department of Buildings ("DOB"), is illegal, and
> thereby represents a default by Defendant under the Lease.
>
> 17.    The legalization of the door was necessary
> for Landlord's Work to have been completed, which
> completion was required as aforesaid prior to defendant's
> delivery of the Premises to plaintiff and the activation of
> the Commencement Date.
>
> 24.    Thus, defendant failed "to deliver the
> Premises to plaintiff with Landlord's Work Substantially
> Completed."
>
> 39.    Defendant failed to deliver the Premises to
> plaintiff in "legal" condition until March 6, 2017 and also
> deprived plaintiff of valuable substantial square footage of
> the Premises, all as aforesaid, and defendant is estopped
> from raising its claimed defaults.

---

[6] A copy of the Transcript of the February 8, 2017 Hearing in the First *Yellowstone* Action is annexed to the
accompanying declaration of Alec P. Ostrow as Exhibit 2.

> 48.    Under §9.1 of the Lease, as aforesaid, plaintiff is entitled to a rent abatement until defendant provides a legal second entranceway to the Premises, as aforesaid.
>
> 49.    Thus, plaintiff is entitled from defendant to a credit for, abatement, or payment back of all the months rent plaintiff paid while the second doorway issue remained unsatisfied.[7]

At the time of the filing of this bankruptcy case, the Landlord had moved for an order vacating the *Yellowstone* injunction and granting a judgment of ejectment, based on the Debtor's willful and repeated failure to pay Court-ordered use and occupancy.[8] Briefing on the Landlord's motion has been stayed, first pending a motion of the Debtor's counsel for leave to withdraw,[9] and then following the filing of the Debtor's bankruptcy case.

In response to a subsequent notice, dated May 9, 2017, to cure a default under the Lease, this time with respect to insurance, the Debtor commenced another State Court action against the Landlord, on June 14, 2017, Index No. 653238/2017 (the "Second *Yellowstone* Action") for another *Yellowstone* injunction to toll the cure period and to prevent the Landlord from terminating the Lease.  The same day, Justice Kornreich, to whom the Second *Yellowstone* Action had also been assigned, signed an order to show cause with a temporary restraining order pending the hearing of the Debtor's motion for

---

[7] A copy of the Plaintiff's verified complaint in the First *Yellowstone* Action is annexed to the accompanying declaration of Alec P. Ostrow as Exhibit 3.

[8] A copy of the order to show cause, signed on July 11, 2017, bringing the Landlord's motion on for hearing is annexed to the accompanying declaration of Alec P. Ostrow as Exhibit 4.

[9] A copy of the order to show cause, also signed on July 11, 2017, bringing the Debtor's counsel's motion for leave to withdraw and staying all proceedings for 30 days, except for the payment of use and occupancy, is attached to the accompanying declaration of Alec P. Ostrow as Exhibit 5.

the *Yellowstone* injunction.[10]   On August 9, 2017, Justice Kornreich held a hearing on the

motion in the First *Yellowstone* Action on the motion of the Debtor's counsel to withdraw

and on the motion in the Second *Yellowstone* Action on the motion of the Debtor for a

*Yellowstone* injunction to toll the time to cure the insurance default to prevent the

termination of the Lease based on this default.   Following the hearing, Justice Kornreich

granted the attorney withdrawal motion because substitute counsel had appeared for the

Debtor in both *Yellowstone* Actions.[11]   Significantly, the motion for a *Yellowstone*

injunction in the Second *Yellowstone* Action was denied.   An amended order denying this

motion was entered on August 10, 2017.[12]   This order states in relevant part:

> **ORDERED** that this motion is denied both due to the
> unclean hands of the tenant whose repeated bad acts and
> gamesmanship militate in favor of denying equitable relief.
> Moreover, the plaintiff-tenant's failure to obtain the
> required insurance, even until today, also requires denial of
> the Yellowstone application.   All stays are lifted.

Following the denial of the *Yellowstone* injunction and the lifting of all stays

relating to the notice to cure the insurance default, the Landlord issued a five day notice

of termination, dated August 14, 2017, terminating the Lease effective August 22, 2017.

On August 21, 2017, in the Second *Yellowstone* Action, the Debtor filed a motion with a

proposed order to show cause seeking, among other things, to renew and/or reargue the

---

[10] A copy of the order to show cause, signed on June 14, 2017, with a temporary restraining order is
annexed to the accompanying declaration of Alec P. Ostrow as Exhibit 6.

[11] It is important to note that the Debtor has engaged multiple law firms in the two *Yellowstone* Actions
since the First *Yellowstone* Action was filed in January of 2017.

[12] A copy of the amended order denying the *Yellowstone* injunction in the Second *Yellowstone* Action is
annexed to the accompanying declaration of Alec P. Ostrow as Exhibit 7. The amended order bears the date
August 8, 2017, but this appears to be an error, since the hearing was held the following day, and an
original order was dated August 9, 2017.  The original order, which is handwritten, reads the same as the
amended order, which is typewritten, except that it states at the outset that the motion is "granted" instead
of "denied."  Based on Justice Kornreich's ruling, the amended order made the appropriate correction.

denial of its prior motion for a *Yellowstone* injunction and to toll the Landlord's

termination of the Lease.[13]  After hearing the Debtor and the Landlord, Justice Kornreich

signed an order denying this motion, stating in relevant part, "it is ordered that this

application for renewal and reargument is denied."[14]  The Debtor filed its bankruptcy

petition later the same day.

    Subsequent to the filing of the Debtor's bankruptcy petition, on September 7,

2017, the Debtor filed notices of appeal of the two orders denying the *Yellowstone*

injunction in the Second *Yellowstone* Action and the order denying the application for its

renewal and reargument.[15]  Also, on August 31, 2017, the Landlord filed a motion to

dismiss the Debtor's bankruptcy case, with a prohibition on re-filing, a declaration that

the automatic stay did not apply to prevent acts to recover possession of the Premises; or

alternatively, for relief from the automatic stay, the appointment of a chapter 11 trustee,

or the conversion of the case to chapter 7.  The Debtor's complaint in this adversary

proceeding served as the centerpiece of the Debtor's opposition to the Landlord's motion.

On November 3, 2017, this Court issued its memorandum of decision on the Landlord's

motion (the "Memorandum of Decision"), which is electronically reported at *In re

Artisanal 2015, LLC*, No. 17-12319 (JLG), 2017 WL 5125545 (Bankr. S.D.N.Y. Nov. 3,

2017).  The Memorandum of Decision granted the Landlord relief from the automatic

stay to continue the two *Yellowstone* actions through final judgments, denied those

portions of the Landlord's motion that sought dismissal of the bankruptcy case and a

---

[13] A copy of the Debtor's proposed order to show cause is annexed to the accompanying declaration of Alec P. Ostrow as Exhibit 8.

[14] A copy of this order is annexed to the accompanying declaration of Alec P. Ostrow as Exhibit 9.

[15] Copies of the two notices of appeal are annexed to the accompanying declaration of Alec P. Ostrow as Exhibit 10.

determination that the automatic stay did not apply, deferred those portions of the motion

seeking the appointment of a chapter 11 trustee and conversion of the case to chapter 7.

As this Court has already observed:

> On September 28, 2017, the Debtor filed the
> Bankruptcy Complaint herein against the Landlord,
> seeking, in effect, the same relief it is seeking in the
> *Yellowstone* Actions in the State Court.  In so doing, the
> Debtor essentially asserts the same claims in the
> Bankruptcy Complaint against the Landlord, and bases its
> claims upon the same factual allegations as in the First and
> Second Yellowstone Complaint – *to wit*, that (i) the
> Landlord had not "Substantially Completed" "Landlord's
> Work" and delivered possession of the Premises to the
> Debtor by the Commencement Date, which was agreed to
> by the Debtor only because it had been misled by the
> Landlord's misrepresentations as to the legality of the
> second "Door," and (ii) that the Debtor was not in default
> of its insurance obligations under the Lease because it had
> obtained the necessary insurance coverage retroactively
> and/or the other insurance coverage was not applicable.

Memorandum of Decision at 15 (*In re Artisanal 2015,* 2017 WL 5125545 at *7).

The Debtor's complaint in this Court seeks a declaratory judgment with respect to

three items:

> i.  the Lease was not terminated prior to
> bankruptcy;

> ii.  the Commencement Date under the
> Lease should be re-established as of March 6, 2017, when
> the door that was allegedly improperly constructed by the
> Landlord was supposedly fully approved; and

> iii.  the Debtor owes no rent under the Lease
> until January 2018, based on the rent deferral under the
> Lease until 330 days after the Commencement Date, and
> that the Debtor should receive a credit or offset for all rent
> previously paid.

*See* Adversary Complaint ¶ 63. Each of these items is the subject of motions and pleadings in one or both *Yellowstone* actions and has already been provisionally decided against the Debtor. Rather than continue to litigate the *Yellowstone* actions to final judgments, by filing its complaint in this Court, the Debtor seeks a determination of the merits of these actions here. This it may not do. For the reasons set forth below, either the Debtor's complaint should be dismissed for lack of subject matter jurisdiction, or this Court should abstain from hearing it.

## Argument

### I

**BECAUSE THE ADVERSARY COMPLAINT SEEKS TO RELITIGATE
MATTERS ALREADY DETERMINED ADVERSELY TO THE
PLAINTIFF IN INTERLOCUTORY JUDGMENTS ON APPEAL,
THE *ROOKER-FELDMAN* DOCTRINE DEPRIVES THIS
COURT OF SUBJECT MATTER JURISDICTION.**

It should be crystal clear that the complaint in this adversary proceeding is essentially comprised of allegations made and rejected by Justice Kornreich in appealable interlocutory judgments in the two *Yellowstone* actions. The Debtor, having lost before Justice Kornreich, is now seeking another round of the same litigation in a different forum.

As this Court has recognized in finding that the Debtor's chapter 11 petition was filed with subjective bad faith, the Debtor has sought to prevent the termination of its Lease on the basis of the insurance default twice in the Second *Yellowstone* Action: once after the notice to cure was issued, and the second time after the termination notice was issued. On both occasions, Justice Kornreich denied the Debtor's requested injunction.

9

As a practical matter, the denial of the injunction after the five-day termination notice was issued, finally determined the issue of the validity of the termination notice, subject only to appeal.  The Debtor has appealed the orders denying the injunction to the Appellate Division.  Memorandum of Decision at 12-14 (*In re Artisanal 2015,* 2017 WL 5125545 at *5-6).  This Court is not an appellate court to the state court.

In addition, as discussed at length above, the Debtor has sought to avoid paying rent and the consequences of the Commencement Date Agreement by raising the issue of the allegedly improper door in the First *Yellowstone* Action.  Justice Kornreich has rejected the notion that the Debtor can remain in the Premises without paying rent or use and occupancy, by expressly requiring the payment of use and occupancy on an ongoing basis and by signing an order to show cause on July 11, 2017, bringing on for hearing the Landlord's motion to vacate the *Yellowstone* injunction and for a judgment of ejectment.  Moreover, Justice Kornreich has ruled that the Debtor's allegation of an improper door was based on hearsay and lacked substantiating or probative evidence, that the Debtor signed the Commencement Date Agreement with the acknowledgment that the Landlord's Work was Substantially Completed, and in any event, that the Debtor failed to comply with its contractual obligation, pursuant to, *inter alia*, Section 9.1 of the Lease, to notify the Landlord promptly, having waited from June to November 2016 before notifying the Landlord of the issue.  This Court is not the appropriate forum to relitigate these matters or revisit such rulings.

The *Rooker-Feldman* doctrine has as its foundation the lack of jurisdiction of any federal court other than the United States Supreme Court to review a decision of a state court.  18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal*

*Practice and Procedure 2d* § 4469.1 (2002). This doctrine "bars a losing party in state court 'from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). Here the allegation is that, notwithstanding Justice Kornreich's denial of a *Yellowstone* injunction preventing termination of the Lease, the Debtor retains a right to cure defaults under 11 U.S.C. §§ 365, 1123. *See* Adversary Complaint ¶ 63. Following the Supreme Court's *Exxon Mobil* decision, the Second Circuit has prescribed four requirements for application of the *Rooker-Feldman* doctrine: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff must be complaining of injuries caused by the state court judgment; (3) the plaintiff must invite district court review and rejection of the state court judgment; and (4) the state court judgment must have been rendered before the district court proceeding commenced. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).

The satisfaction of the first and fourth of these requirements is beyond dispute. It does not matter for purposes of the *Rooker-Feldman* doctrine whether there is a final state court judgment or a ruling that is law of the case. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003). Indeed, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires that the judicial proceedings of any state court "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . ." This Act "requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of the State

11

would give.'" *Exxon Mobil*, 544 U.S. at 293 (quoting *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986)).  At a minimum Justice Kornreich's two orders denying the injunction against the termination of the lease in the Second *Yellowstone* Action are interlocutory judgments, *see* N.Y. C.P.L.R. § 105(k) (defining "judgment" to include an "interlocutory judgment"); and are appealable of right. *Id.* § 5701(a)(1)-(2)(i).  Indeed, the Debtor has already appealed these orders to the Appellate Division. Under the New York law of the case doctrine, "no other judge of coordinate jurisdiction may undo the decision."  David D. Siegel, *New York Practice* § 448, at 781 (5th ed. 2011) (citing *State of N.Y. Higher Educ. Sevs. Corp. v. Starr*, 158 A.D.2d 771, 551 N.Y.S.2d 363 (3d Dep't 1990).  By virtue of 28 U.S.C. § 1738, this federal Court must treat this interlocutory judgment the same as a New York state court would treat it, and therefore, may not undo the decision of the state court of coordinate jurisdiction.

As to the second and third requirements, although the Debtor does not in so many words allege that its injuries were caused by Justice Kornreich's rulings or invite this Court to review and reject such rulings, the practical effect of what the Debtor seeks is the same.  The Debtor asks this Court to render the state court's decision not to enjoin the Lease's termination null and void.   That alone is enough to prevent this Court from entertaining the Debtor's requested relief.

In sum, the purpose of the adversary proceeding is to relitigate matters that the Debtor lost in State Court prior to the filing of the petition.  Such losses are reflected in interlocutory judgments, two of which are on appeal.  This Court has no power to revisit and undo the interlocutory judgments of the State Court.  This Court is not an appellate

12

court to the State Court.  As a result, this Court lacks subject matter jurisdiction, and the adversary proceeding must be dismissed.

## II

## **MANDATORY BANKRUPTCY ABSTENTION IS WARRANTED.**

The mandatory abstention provision, 28 U.S.C. § 1334(c)(2), provides:

> Upon a timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if the action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Courts construing this statute have set forth six requirements for mandatory abstention: (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) that action can be timely adjudicated in state court.  *N.Y. City Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.)*, 293 B.R. 308, 331 (S.D.N.Y. 2003); *In re Dreier*, 438 B.R. 449, 457 (Bankr. S.D.N.Y. 2010). In this case, all of the requirements are satisfied.

First, the Landlord is making a timely motion.  This motion is being filed within 46 days of the filing of the complaint, and within the time, as extended by the Plaintiff, to answer or move to dismiss the complaint.  *See Allied Mechanical & Plumbing Corp. v. Dynamic Hostels Housing Dev. Fund Co. (In re Allied Mechanical & Plumbing Corp.)*,

62 B.R. 873, 877 (Bankr. S.D.N.Y. 1986) (abstention motion made within 60 days of filing of adversary proceeding is timely). Second, the adversary proceeding is based on a state law claim. Although the Debtor alleges that it maintains federal rights to cure the Lease, the challenge to the Lease termination has nothing to do with federal law. Rather, it is based on two non-federal law contentions: (i) that the notice to terminate violated the *Yellowstone* injunction in the First *Yellowstone* Action;[16] and (ii) that the Debtor had cured the insurance default under the Lease.[17] Adversary Complaint ¶¶ 54-55. Both such contentions invoke state law, the interpretation of a state court injunction and the interpretation of the Debtor's Lease. Third, the claims and causes of action are related to a bankruptcy case, but do not arise under the Bankruptcy Code or arise in a bankruptcy case. Certainly, no provision of the Bankruptcy Code is cited as a basis to invalidate the termination of the Lease. Therefore, there is no "arising under" jurisdiction under 28 U.S.C. § 1334(b). Also, these challenges are independent of, and exist separate from, the Debtor's bankruptcy case. Therefore no "arising in" jurisdiction exists under the same statute. *See Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 162-63 (3d Cir. 2004); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987); *Penthouse Media Grp. v. Guccione (In re Gen'l Media, Inc.)*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005).

Fourth, the Plaintiff's claims are in federal court only because of bankruptcy jurisdiction. No other federal law is invoked as a basis to invalidate the termination of

---

[16] Obviously, Justice Kornreich did not think that the Landlord was violating her own injunction when she refused to enjoin the notice to cure the insurance default that the Landlord had issued, and lifted all stays on such notice. Indeed, her order denying the first *Yellowstone* injunction in the Second *Yellowstone* Action (Exhibit V to the Motion) expressly provides: "All stays are lifted."

[17] Again, Justice Kornreich rejected this contention, stating in the same order, "plaintiff-tenant's failure to obtain the required insurance, even until today, also requires denial of the Yellowstone application."

the Lease. Hence, there is no federal question jurisdiction. *See* 28 U.S.C. § 1331. There

is also no basis for diversity jurisdiction, since paragraphs 24 and 25 of the Adversary

Complaint alleges that both parties are New York limited liability companies. *See id.* §

1332. Consequently, there is no basis for federal jurisdiction other than "related to"

bankruptcy jurisdiction. Fifth, it cannot be disputed that the two *Yellowstone* Actions

were commenced prior to bankruptcy.

Sixth and finally, the two *Yellowstone* actions can be timely adjudicated in the

state court. This requirement involves the consideration of the following factors: (1) the

backlog of the state court's calendar relative to the federal court's calendar; (2) the

complexity of the issues presented and respective expertise of each forum; (3) the status

of the bankruptcy case; and (4) whether the state court proceeding would prolong the

administration or liquidation of the bankruptcy case. *Parmalat Capital Fin. Ltd. v. Bank

of Am. Corp.*, 671 F.3d 261, 266 (2d Cir. 2012) (hereafter *Parmalat II*); *Parmalat Capital

Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011) (hereafter *Parmalat I*);

*CORE Litig. Trust v. Apollo Global Mgmt., LLC (In re AOG Entm't, Inc.)*, 569 B.R. 563,

579 (Bankr. S.D.N.Y. 2017). These factors "are meant to guide courts' analyses,"

*Parmalat II*, 671 F.3d at 269; but they are not requirements, since one factor tipping in

favor of denying abstention may be outweighed by the other factors supporting

abstention. *See id.* at 267, 270 (observing that although the first factor tipped in favor of

denying abstention, the factors together supported abstention). In the present case,

consideration of these factors demonstrates that the timely adjudication requirement is

satisfied. In granting the Landlord relief from the automatic stay, this Court has already

observed:

> Although the State Court is not necessarily a "specialized
> tribunal" it has familiarity with the matters at issue in the
> *Yellowstone* Actions, and, as such, judicial economy will be
> served by granting the Landlord stay relief.  There is not
> dispute that the matters can be promptly resolved in the
> State Court . . . .

Memorandum of Decision at 33 (*In re Artisanal 2015,* 2017 WL 5125545 at *12).

Consequently, this Court has already determined the first and second factors in favor of a

timely adjudication in state court.  That the third and fourth factors similarly favor timely

adjudication in state court can be inferred from this Court's decision to grant stay relief to

the Landlord.  Consequently, all of the factors point to the conclusion that the Debtor's

claim can be timely adjudicated in the State Court, as evidenced by this Court's grant of

stay relief to the Landlord.

As a result, all the requirements of mandatory abstention are met, and this Court

must abstain from hearing this adversary proceeding.


### III

### **PERMISSIVE BANKRUPTCY ABSTENTION IS ALSO APPROPRIATE.**

Even if the requirements of mandatory abstention are not satisfied, this Court may

permissively abstain.  28 U.S.C. § 1334(c)(1).  The factors that govern permissible

abstention are:

> (1) the effect or lack thereof on the efficient administration
> of the estate if a Court recommends abstention, (2) the
> extent to which state law issues predominate over
> bankruptcy issues, (3) the difficulty or unsettled nature of
> the applicable state law, (4) the presence of a related
> proceeding commenced in state court or other
> nonbankruptcy court, (5) the jurisdiction basis, if any, other
> than 28 U.S.C. § 1334, (6) the degree of relatedness or
> remoteness of the proceeding to the main case, (7) the

> substance rather than form of an asserted "core"
> proceeding, (8) the feasibility of severing state law claims
> from core bankruptcy matters to allow judgments to be
> entered in state court with enforcement left to the
> bankruptcy court, (9) the burden [on] the court's docket,
> (10) the likelihood that the commencement of the
> proceedings in a bankruptcy court involves forum shopping
> by one of the parties, (11) the existence of a right to a jury
> trial, and (12) the presence in the proceeding of nondebtor
> parties.

*WorldCom, Inc. Sec. Litig.*, 293 B.R. at 332; *accord Dreier*, 438 B.R. at 458-59;

*Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.)*,

241 B.R. 511, 520 (Bankr. S.D.N.Y. 1999). It has been observed that these factors are

closely related to the factors used by courts, including the Second Circuit in *Sonnax*

*Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280,

1286 (2d Cir. 1990) in determining a motion for stay relief to continue litigation in

another forum. *Truebro, Inc. v. Plumberez Special Prods., Inc. (In re Plumberex*

*Specialty Prods., Inc.)*, 311 B.R. 551, 558-59 & n.13 (Bankr. C.D. Cal. 2004).

Most of these factors are certainly present. In granting stay relief to the Landlord,

this Court has already addressed the equivalents of permissive abstention factors (1), (2),

(4), (6) and (8), and determined them in the Landlord's favor. Memorandum of Decision

at 33 (*In re Artisanal 2015,* 2017 WL 5125545 at *12). Permissive abstention factors (5)

and (7), the absence of any non-bankruptcy basis for federal jurisdiction and the non-core

nature of the complaint, are discussed above in Point II. Moreover, in its finding that the

Debtor's chapter 11 petition was filed with subjective bad faith, this Court has already

determined permissive abstention factor (10) in the Landlord's favor, namely, that by

filing the adversary complaint, the Debtor is engaged in forum shopping. Memorandum

of Decision at 28-29 & n.24 (*In re Artisanal 2015,* 2017 WL 5125545 at *11 & n.24).

17

As a result, most of the factors relevant to permissive abstention are present, and this Court should abstain from hearing this adversary proceeding.

## IV

### THIS COURT SHOULD ALSO ABSTAIN UNDER THE DOCTRINE OF *YOUNGER v. HARRIS.*

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court enunciated an abstention doctrine preventing federal court interference in ongoing state court criminal proceedings. The Supreme Court extended *Younger* abstention to civil proceedings in *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10 (1987), when it held that the federal courts should abstain from a constitutional challenge to a Texas appellate bond requirement.  In bankruptcy cases, Judge Gropper applied the *Younger* abstention principles in refusing to enjoin the termination of a debtor's state liquor license after a state appellate court had twice refused to enjoin such termination prior to bankruptcy.  *Go W. Entm't, Inc. v. N.Y. State Liquor Authority (In re Go W. Entm't, Inc.)*, 387 B.R. 435, 442-46 (Bankr. S.D.N.Y. 2008).

This is particularly applicable in this case.  Like the situation in *Go West Entertainment*, a state court has twice refused an injunction to prevent the termination of the Debtor's rights prior to bankruptcy, and the Debtor now asks the bankruptcy court for a different outcome.  This Court should not interfere with an ongoing state court appellate process that can provide the Debtor the same relief it seeks in the adversary proceeding. This Court should abstain from hearing this adversary proceeding based on the same *Younger v. Harris* doctrine applied in *Go West Entertainment.*

## Conclusion

For the foregoing reasons, the Landlord respectfully requests that the Court

dismiss the above-captioned adversary proceeding for lack of subject matter jurisdiction,

or abstain from hearing it, and grant the Landlord such other and further relief as is just.

Dated: New York, New York
      November 13, 2017

                        Respectfully submitted,

                        BECKER, GLYNN, MUFFLY, CHASSIN &
                        HOSINSKI LLP

                        By:  */s/ Alec P. Ostrow*
                              Alec P. Ostrow
                              aostrow@beckerglynn.com
                              299 Park Avenue, 16th Floor
                              New York, NY  10171
                              Telephone: (212) 888-3033
                              Facsimile:  (212) 888-0255

                              *Attorneys for 387 Park South L.L.C.*